

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-22-2007

# Montanye v. Wissahickon Sch Dist

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5286

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Montanye v. Wissahickon Sch Dist" (2007). *2007 Decisions.* Paper 1582.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1582

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5286
_____

SALLIE K. MONTANYE,

Appellant

v.

WISSAHICKON SCHOOL DISTRICT;
WISSAHICKON SCHOOL DISTRICT BOARD OF DIRECTORS;
DONNA LEADBEATER, President; BARBARA MOYER;
MARJORIE BROWN; BETSY CORNISH;
WILLIAM MCKERMAN, III; ROBERT MCQUADE;
YOUNG PARK; PAUL REIBACH; TERESA WILLIAMS,
Members of the Board; STANLEY J. DURTAN, Supt. of Schools;
MARIA SALDVUCCI, Guidance Counselor
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 02-cv-08537)
District Judge: Honorable Jan E. DuBois
_____

Argued on January 19, 2007

Before: SLOVITER, RENDELL, and CUDAHY* , Circuit Judges.

(Filed:  February 22, 2007)

_____

* Honorable Richard D. Cudahy, Senior Judge of the United States Court of Appeals
for the Eighth Circuit, sitting by designation.

Gregory M. Harvey   **[ARGUED]**
Catherine M. Reisman
Montgomery, McCracken, Walker & Roads
123 South Groad Street
Philadelphia, PA  19109

*Counsel for Appellant*
   *Sallie K. Montanye*


Michael I. Levin   **[ARGUED]**
Joshua B. Axelrodi
Stacy G. Smith
Levin legal Group
1800 Byberry Road
1301 Masons Mill Business Park
Huntingdon Valley, PA   19006

*Counsel for Appellees*
   *Wissahickon School District;*
   *Wissahickon School District Board of Directors;*
   *Donna Leadbeater, President; Barbara Moyer;*
   *Marjorie Brown; Betsy Cornish;*
   *William Mckerman, Iii; Robert Mcquade;*
   *Young Park; Paul Reibach; Teresa Williams,*
   *Members of the Board; Stanley J. Durtan, Supt. of Schools;*
   *Maria Saldvucci, Guidance Counselor*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

Sallie Montanye appeals the District Court's dismissal of her Amended

Complaint, setting forth several causes of action under 42 U.S.C. § 1983 and the

Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"), against the

Wissahickon School District, Wissahickon High School and various officials of both. Though Montanye's Amended Complaint included several counts, only two are the subject of this appeal: Count 1, in which Montanye alleges violations of her right to expressive conduct under the First Amendment; and Count 2, wherein Montanye alleges violations of Section 504 of the Rehabilitation Act. We will affirm the District Court's ruling on both counts.[1]

## I. Factual and Procedural History

In her Amended Complaint, Montanye sets forth details of her interactions with K.T. ("K"), a 14-year old student assigned to Montanye's 9th grade classroom at Wissahickon High School in September 2001. K had been on homebound instruction for her 8th grade year due to psychological problems, and had been hospitalized for a suicide attempt two months before commencing 9th grade. Throughout the fall of 2001, Montanye and K's mother discussed K's ongoing problems at home and at school. In January 2002, one of Montanye's classroom aides found a note, written by K, expressing

---

[1] The District Court had jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). We have appellate jurisdiction under 28 U.S.C. § 1291. As Montanye challenges the District Court's grant of Appellees' motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), our review tests the District Court's view of the sufficiency of the complaint. "Our review of a district court's decision to grant a motion to dismiss . . . is plenary." *Gallo v. City of Philadelphia*, 161 F.3d 217, 221 (3d Cir. 1998). The underlying standard governing a motion to dismiss is whether "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Though the District Court later granted summary judgment in favor of Appellees with respect to Montanye's equal protection claims, that order is not the subject of this appeal. *See Montanye v. Wissahickon Sch. Dist.*, 399 F.Supp.2d 615 (E.D. Pa. 2005).

suicidal thoughts.  Montanye showed the note to Wissahickon High School Principal Robert Anderson, who passed it along to the school's "WIN Team," an administrative unit charged with assisting at-risk students.  However, Montanye avers that the WIN Team never contacted K, her mother, or Montanye about the note.

When Montanye learned about the note and approached K's mother about it, she indicated to Montanye that she could not control K and that K was staying at friends' houses and not coming home at night.  K's mother was clearly upset about the situation. Montanye suggested to K that she ask her mother if she could see a therapist and gave her the name of one approved by the school district.  When it became clear that K would only attend therapy sessions if Montanye accompanied her, K's mother agreed.  In February 2002, Montanye made arrangements for K to attend a session, transported K to that session, and, with K and her mother's permission, attended the session.  Thereafter, K's behavior and emotional condition continued to deteriorate.  In one incident, K became hysterical at school, which led to K being admitted to a psychiatric facility for observation.  Following her release, Montanye again attended a therapy session with K.

In March 2002, Principal Anderson directed Montanye not to attend any future therapy sessions with K.  Later that month, the WIN Team wrote a letter to Anderson expressing concern about the propriety of Montanye's interaction with K and other students identified as "high risk" through the Wissahickon School District's Student Assistance Program ("SAP") process.

In May 2002, School District Superintendent Stanley Durtan sent Montanye a letter informing her of allegations that she had engaged in "willful neglect of duty, insubordination, incompetency, persistent negligence in the performance of duties, willful violation of school laws, and improper conduct growing out of" her involvement in various situations pertaining to K. Durtan's letter informed Montanye that a "*Loudermill* hearing" would take place, giving her an opportunity to respond to the charges.[2] Montanye avers that this hearing was held to "make her resign as part of the District's unlawful campaign against special education." During the hearing, at which Montanye was represented by counsel, Principal Anderson testified that he had been aware of Montanye's efforts with regard to K. Montanye claims that following, and because of, this testimony, the School District told Principal Anderson to find other employment, which he eventually did.

Following the hearing, in June 2002, Superintendent Durtan sent Montanye a letter – which she characterizes as a "constructive discharge letter" – setting forth various policies, relating to her interaction with at-risk students, to which Montanye would be required to adhere over the course of her future employment with the School District.[3] The three specific directives contained in the letter were:

---

[2]The term "*Loudermill* hearing" refers to the process a government entity must afford to a civil servant prior to terminating his or her employment. *See Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985).

[3]Despite Montanye's assertions about the purpose of Superintendent Durant's letter, she concedes that it did not have the effect of formally discharging her.

(1)      that Montanye not engage in any activity or conduct not expressly required or reasonably implied by her job or contractual duties;

(2)      that Montanye comply with legal processes and school district policies regarding evaluations and referrals of students, including the SAP; and

(3)      that if Montanye engages in any conduct outside the school or outside her status of a teacher with any student or parent, she is to notify the school and advise the parent that she is doing so strictly in her personal capacity.

Montanye's complaint characterizes these rules as "impossible new rules for her behavior." She avers that the letter was designed to chill her "protected speech and punish her for helping special education students, in accordance with [Wissahickon School District's] official unwritten policy, sanctioned by the School Board, of discouraging at risk students from finding help and advancing in public school, and therefore in life."

In Count 1 of her Amended Complaint, Montanye avers that her speech and conduct, "in helping K. to get a therapist, helping K. and Mrs. T. work toward a healthy family life and giving educational and emotional support to K an at risk student, was Constitutionally protected speech concerning matters of great public importance" and that this speech was infringed upon by the *Loudermill* hearing and the June 2002 letter.

In Count 2, Montanye avers that under section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794, defendants are prohibited from retaliating "against any individual who provides special assistance, advocacy and support for children at risk

6

within a program receiving federal funds." Montanye contends that she was punished for providing such assistance to K and therefore is entitled to damages.

We will address each of these claims in turn.

## II. Count 1 – First Amendment Claim[4]

As the District Court found, the Supreme Court has determined that, while expressive conduct is protected under the First Amendment, "we cannot accept the view that an apparent limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1967). Rather, to determine whether a particular action or pattern of conduct constitutes speech protected under the First Amendment, we must ask whether "an attempt to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. State of Wash.*, 418 U.S. 405, 410-11 (1974)).

The District Court opined that, here, "[Montanye']s conduct in assisting an at-risk student cope with her emotional and psychological problems does not possess sufficient communicative elements to fall within the protection of the First Amendment." Therefore, the District Court concluded, and we agree, that while Montanye's conduct in

---

[4]Though Count 1 of Montanye's Amended Complaint alleged constitutional violations under the Fourteenth Amendment, which the District Court dismissed, she has elected only to pursue her First Amendment claim on appeal.

7

scheduling K's therapy sessions, transporting her to those sessions and attending those sessions may have involved some "kernel of expression," there was no intent to convey any message, let alone a particularized message, supporting special education, and no likelihood that her interactions with K could be "understood" as conveying such a message.

Accordingly, we will not disturb the District Court's finding that Montanye failed to allege that she engaged in conduct protected by the First Amendment and its resulting dismissal of Count I.

### III.  Count 2 – Rehabilitation Act Claim[5]

In her Amended Complaint, Montanye alleges that Appellees violated § 504 of the Rehabilitation Act in conducting the *Loudermill* hearing and issuing the subsequent June 2002 letter.  Section 504 provides that no "otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  This section, as the District Court properly noted, also dictates that the "standards used to determine whether this section has been violated in a complaint alleging employment

---

[5]In her brief on appeal, Montanye refers to a claim against the School District for "interference with . . . students' protected rights" under the Rehabilitation Act and the Americans with Disabilities Act ("ADA").  However, this claim was neither raised in Montanye's Amended Complaint nor in her brief below in opposition to Appellees' motion to dismiss.  Accordingly, Montanye's claim is not properly before us now.

discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act of 1990." 29 U.S.C. § 794(d). The ADA states, in relevant part, that no "person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this [Act] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [Act]." 42 U.S.C. § 12203(a). Finally, we have previously held that we will "analyze ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

Given this framework, the District Court properly determined that, to state a *prima facie* case of retaliation under the ADA and the Rehabilitation Act, "'a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's action.'" *Fogelman v. Mercy Hosp.*, 283 F.3d 561, 567-68 (3d Cir. 2002) (quoting *Krouse*, 126 F.3d at 500).

The District Court concluded that Montanye failed to allege that she engaged in protected employee activity under the ADA or the Rehabilitation Act. We agree with the District Court that Montanye has not alleged that she "opposed any act or practice made unlawful by" the ADA or Rehabilitation Act, nor has she asserted that she "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing" under the ADA or Rehabilitation Act.

9

Though Montanye argues that the Rehabilitation Act prohibits retaliation against individuals who "provide special assistance, advocacy and support," the District Court correctly concluded that this is not the type of employee activity protected by the relevant statutes.  It is clear from the case law that protected activity does not include mere assistance of special education students, but, rather, requires affirmative action in advocating for, or protesting discrimination related to, unlawful conduct by others.  *See, e.g.*, *Sumner v. U.S.  Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (finding that "protected conduct" contemplates such activity as "making complaints to management," "writing critical letters," "protesting against discrimination," and "expressing support of co-workers").  Indeed, the concept of "protected activity" at issue here is necessarily limited to, if not speech in the strict sense, at least the sort of expressive conduct which conveys a message.  Therefore, Montanye's Rehabilitation Act claims fail for the same reasons that her First Amendment claims fail: Montanye has not sufficiently alleged that her actions in helping K were expressive or communicative.

Accordingly, we will not disturb the District Court's conclusion that Montanye failed to set forth a claim under the ADA and/or Rehabilitation Act.[6]

---

[6]Appellees argue that Montanye's claims under Count I and Count II are procedurally barred and not properly before us.  With respect to Count I, Appellees argue that Montanye's Notice of Appeal refers only to Count II and, therefore, that we should not consider her appeal as to Count I.  With respect to Count II, Appellees argue that Montanye has waived her Rehabilitation Act claim because she failed to defend that claim in her brief below in opposition to Appellees' motion to dismiss.  At oral argument, counsel for Appellees urged that we rule in their favor on these bases.  Rather than rely on these arguably technical "procedural" grounds, however, we prefer to base our ruling on

## IV. Conclusion

In light of the foregoing, we will AFFIRM the Order of the District Court.

_____

---

the merits of the District Court's order of dismissal.