RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0317p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

PORTER SMITH,

*Plaintiff-Appellant*,

*v.*

No. 24-1439

MICHIGAN DEPARTMENT OF CORRECTIONS; STATE OF
MICHIGAN,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:20-cv-10421—Linda V. Parker, District Judge.

Argued: February 5, 2025

Decided and Filed: November 21, 2025

Before: BATCHELDER, BUSH, and BLOOMEKATZ, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** James B. Rasor, RASOR LAW FIRM PLLC, Royal Oak, Michigan, for Appellant.
Kendell S. Asbenson, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing,
Michigan, for Appellees. **ON BRIEF:** James B. Rasor, Amanda G. Washburn, RASOR LAW
FIRM PLLC, Royal Oak, Michigan, for Appellant. Kendell S. Asbenson, OFFICE OF THE
MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

BUSH, J., delivered the opinion of the court in which BATCHELDER, J., concurred.
BLOOMEKATZ, J. (pp. 24–37), delivered a separate opinion concurring in Part V and
dissenting from Parts II–IV.

―――――――――――

**OPINION**

―――――――――――

JOHN K. BUSH, Circuit Judge. This appeal presents a question of first impression: Does a private cause of action for retaliation exist in § 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794? For at least the last 25 years, we have assumed that it does, often analyzing Rehabilitation Act retaliation claims based on precedent interpreting Title VII of the Civil Rights Act or the Americans with Disabilities Act (ADA). Those statutes, unlike the Rehabilitation Act, have express anti-retaliation provisions. But we have never addressed—nor seemingly had reason to address—whether, and if so *where*, a retaliation cause of action lies in § 504 of the Rehabilitation Act.

We are now faced with that question. Porter Smith sued the Michigan Department of Corrections (MDOC) and the State of Michigan under § 504 for (1) failing to provide him with a reasonable accommodation for his disability, and (2) retaliating against him for making an accommodation request and challenging its denial through legal action. The district court granted summary judgment to Defendants on the failure-to-accommodate claim, but the retaliation claim proceeded to trial. The jury found for Defendants.

On appeal, Smith brings a handful of challenges stemming from the trial itself, one of which begs the question before us. Most relevantly, he argues that the district court erred as a matter of law when it instructed the jury that the causation standard for a retaliation claim under the Act was "sole causation." As explained below, we hold that § 504 of the Rehabilitation Act does not provide a cause of action for retaliation. Based on this conclusion and for other reasons, we **AFFIRM** the district court's judgment.

**I.**

Smith began working as a corrections officer at the Michigan Department of Corrections in 1998 and remained in that role for nearly two decades. In July 2017, while on duty at the Macomb Correctional Facility, Smith was injured when he attempted to handcuff an inmate involved in a fight. As the inmate fell on top of him, Smith "felt [his] hip pop." R. 25-2, Smith

Dep., PageID 128.  Once the adrenaline wore off, Smith experienced "excruciating" pain that sent him to the hospital for the night.  *Id.* at PageID 129.

The following day, Smith went on medical leave.  Although told by doctors that he might need hip-replacement surgery, Smith initially chose to explore alternative, less-invasive treatments, such as plasma injections and physical therapy.  After five months without improvement—and with all available medical leave exhausted—he was left without further recourse.

So, Smith returned to work in December 2017 with medical restrictions imposed by his doctor. These restrictions included: "No lifting over 10 lbs, no kneeling/squatting/climbing/jumping/twisting, limited walking/standing during work day, sitting job only, office type work only, no bending."  R. 26-6, Medical File, PageID 512.  Although Smith remained formally classified as a corrections officer with associated pay and benefits, MDOC assigned him to a transitional employment (TE) role in its Training Department to accommodate his limitations.  His initial restrictions were set to expire in January 2018, but he received monthly extensions through June—marking six consecutive months in his TE position.  When it became clear that his condition would not improve in the short term, MDOC granted him a one-month extension through July 13, 2018, even though TE assignments at MDOC do not typically exceed six months.[1]

Before that extension expired, Smith submitted a formal ADA accommodation request. His need for such accommodations, according to his doctor, was "permanent – until [the] patient has [a hip] replacement."  R. 25-6, Accommodations Request Form, PageID 189.  Smith noted in his request that he knew the facility was "down 27 officers," and he identified several light-duty posts "such as Front Desk, Bubble or other areas where [he] could be utilized."  R. 25-8, Email, Page ID 193.  MDOC denied the request, citing the exhaustion of Smith's entitlements and a "lack of vacancies that meet [his] qualifications."  R. 25-9, Resp. to Accommodations Request, Page ID 195.

---

[1]According to an MDOC representative, this policy is not absolute and short-term extensions are sometimes granted when warranted.

MDOC also sent Smith an options designation form, requiring him, if he could not return to full duty by August 10, 2018, to choose among options of medical layoff, waived rights leave of absence, retirement, or resignation.  Smith elected the waived rights leave of absence, which ended his employment but preserved his "continuous service, seniority, and benefits connected with length of service" for up to one year.  R. 25-14, Options Designation Form, PageID 223.

Smith's final months at MDOC were also overshadowed by misconduct investigations. On June 9, a newly hired MDOC nurse filed a sexual harassment complaint, alleging that Smith made her "very uncomfortable" through inappropriate advances both in person and via email during her training.  MDOC formally notified Smith on June 28th that an investigation was underway and that he would be interviewed regarding the complaint.

During the investigation, the assigned investigator reviewed Smith's work emails for evidence supporting the nurse's claims.  Although no inappropriate emails were found, the investigator discovered "personal emails to non-MDOC staff and from a housing realtor."  R. 26-12, Second Investigation Docs., PageID 650.  These findings were referred to the Warden as a potential violation of MDOC's computer use policy.

In August 2018, though Smith was on waived-rights leave and no longer working at the facility, the Warden launched a separate inquiry into Smith's computer use.  The lead investigator requested from the Michigan Department of Information Technology all emails sent or received by Smith between May 1st and August 1st, only to learn from the Department that Smith's email account had been deleted, and the records were unrecoverable.

In September 2018, Internal Affairs closed the sexual-harassment investigation, finding no evidence of misconduct.  However, the inquiry into Smith's email use remained open.  As part of this ongoing investigation, MDOC sent Smith a questionnaire on October 6th—its first formal contact with him regarding the matter, despite the investigation's having started nearly two months earlier.  MDOC requested a response by October 9th, but Smith did not receive the questionnaire until October 10th.  Smith maintains that he returned the questionnaire, although he has no proof of mailing it; MDOC's investigator contends no response was ever received.

Ultimately, the investigator concluded there was not enough evidence to substantiate claims of computer misuse.  Nevertheless, MDOC found that Smith violated Work Rule #38, pertaining to "Reporting Requirements," by failing to return the questionnaire.  Because Smith was on leave at the time, he was neither notified of the investigation's outcome nor given an opportunity to contest the charge.

After successful hip surgery and several months of rehabilitation, Smith felt ready to return to work.  In August 2019, he formally requested reinstatement as a corrections officer.  A month later, MDOC denied his request because of the pending disciplinary action related to the Reporting Requirements violation.  However, after Smith's deposition revealed that he had apparently returned the questionnaire, MDOC extended two unconditional offers of reinstatement to the same corrections-officer position.  Smith declined both offers.

In February 2020, Smith filed suit, alleging claims of discrimination and retaliation under § 504 of the Rehabilitation Act.  The parties cross moved for summary judgment.  The district court granted Defendants' motion in part, dismissing Smith's failure-to-accommodate claim, and denied Smith's motion for summary judgment.

The district court allowed the retaliation claim to proceed to trial.  After a ten-day trial, the jury found in favor of Defendants, concluding that Smith did not prove by a preponderance of the evidence that they retaliated against him.  Smith timely appealed.

## II.

This case sits in a unique posture.  In no case until now has the Sixth Circuit squarely addressed the question whether § 504 of the Rehabilitation Act (the Act) provides a cause of action for retaliation.  But Smith's appeal brings that issue to the forefront.  Among his four challenges to the district court's trial rulings is his argument that the district court erred in giving a jury instruction.  That instruction directed that, to prevail on his retaliation claim, Smith had to prove his disability was the "sole cause" of MDOC's adverse action against him—a standard drawn from § 504(a) of the Act.  Smith argues that the instruction was legally incorrect because retaliation is not prohibited under this provision and therefore is not subject to its "sole cause" standard.  But to resolve the question of the proper elements of a retaliation claim, including its

potential causation element, we must first determine where the cause of action comes from. And more fundamentally, we must rule on whether § 504 of the Act authorizes a claim for retaliation in the first place.

The parties did not argue whether § 504 provides a private right of action before the district court or in their initial briefing. Nevertheless, prior to oral argument, this court requested and received supplemental briefing "addressing whether and how the Rehabilitation Act provides a cause of action for retaliation." The parties then extensively argued that question at oral argument. Oral Arg. 7:09–15, 12:15, 22:30.

Because the parties had the opportunity to fully brief and argue this threshold issue, this court may address it. Review of the issue is particularly appropriate where, as here, the court is asked to enforce a purported statutory right that we conclude, in fact, does not exist. For example, in *United States National Bank of Oregon v. Independent Insurance Agents of America*, 508 U.S. 439 (1994), the Supreme Court held that a court of appeals "did not stray beyond its constitutional or prudential boundaries" when it sua sponte considered whether a statute at issue had been repealed. 508 U.S. at 444–48. The respondents in *National Bank of Oregon* did not challenge the validity of the statute before the district court, or in their opening appellate brief, or at oral argument before the court of appeals. The issue was not briefed until after the court of appeals requested supplemental briefing on the issue after oral argument. *Id.* at 445. The Supreme Court nonetheless held that the court of appeals properly addressed the question. *Id.* at 446-47.

*National Bank of Oregon* is not unique. Indeed, the Supreme Court itself considered whether a statute allowed courts to recognize a cause of action even though the parties had not briefed and argued that issue in the lower courts. *See Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 111–14 (2013). The Court directed the parties to file supplemental briefs and heard oral argument again "addressing [this] additional question." *See id.* at 114; *see also Price v. City of Stockton*, 390 F.3d 1105, 1108 (9th Cir. 2004) (although an issue was not raised below or in initial appellate briefing, the parties' supplemental briefs permitted appellate review of whether a statute created either a private right of action or a right enforceable under a separate statute).

This court "is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99–100 (1991).  Although an appellate court typically does not consider issues not raised below, "[t]his rule is not absolute" and "it is within the ambit of our discretion to entertain questions not raised below." *Quality Assocs. v. P&G Distrib. LLC*, 949 F.3d 283, 287 n.2 (6th Cir. 2020) (quoting *Harris v. Klare*, 902 F.3d 630, 635–36 (6th Cir. 2018) (cleaned up)).  For example, even if parties fail to brief an issue, a reviewing court "may consider an issue antecedent to and ultimately dispositive of the dispute before it." *See Nat'l Bank of Or.*, 508 U.S. at 447 (cleaned up).

The fact that both Smith and MDOC initially accepted that § 504 provides a private cause of action is not dispositive.  "[W]e are not bound by litigants' stipulations or concessions to legal principles." *United States v. Cervenak*, 99 F.4th 852, 858 (6th Cir. 2024); *see also United States v. Wilson*, 978 F.3d 990, 996 (6th Cir. 2020) ("We are not bound to accept . . . what in effect was a stipulation on a question of law."); *see also Wright v. Spaulding*, 939 F.3d 695, 704 (6th Cir. 2019) ("Courts clearly have the power to determine the governing law independent of the parties' representations.").  When this court interprets a statute, such as we do here, "we cannot delegate our authority to the parties." *See United States v. Butts*, 40 F4th 766, 769 (6th Cir. 2022).

Nor do we defer to the district court's assumption as to the existence of a private cause of action for retaliation under § 504.  Instead, we review de novo the district court's "determination regarding the legal accuracy" of a jury instruction. *Frye v. CSX Transp., Inc.*, 933 F.3d 591, 600 (6th Cir. 2019).  De novo scrutiny of whether instructions accurately state the law necessarily includes deciding the foundational legal question of whether the governing statute authorizes a cause of action. *See Kiobel*, 569 U.S. 108 at 111–14 (addressing first whether and under what circumstances a statute allowed courts to recognize a cause of action).

Two provisions of the Rehabilitation Act are relevant for our analysis—§§ 504(a) and (d).  First, § 504(a) provides:

> (a) Promulgation of rules and regulations

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  We have recognized that a disabled person employed by a federal or federally funded entity may bring a cause of action for discrimination under this provision.  *See Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011); *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 578–79 (6th Cir. 2022); *cf. A.J.T. v. Osseo Area Schools*, 605 U.S. 335 (2025).

The second relevant provision, § 504(d), provides:

> (d) Standards used in determining violation of section

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d).  Smith's argument is that the cause of action for retaliation must arise from this provision because it expressly incorporates the standards from the ADA's anti-retaliation provision, 42 U.S.C. § 12203.  From this, he argues that § 504(d)'s cross-reference to the ADA not only imports the standards for evaluating claims but also creates a substantive cause of action for retaliation.  We address this argument below.

**III.**

Before we delve into the substance of the issue—that is, whether a retaliation cause of action exists under § 504 of the Rehabilitation Act—we first must consider whether this question

has already been resolved by precedent from either the Supreme Court or this court. We conclude it has not.

The Supreme Court has never held that any provision of the Rehabilitation Act creates a private right of action for retaliation. The Court has interpreted the Act in a few contexts, but never with regard to a claim for retaliation under § 504 of the Act, the statutory basis asserted by Smith for his claim.

For example, *Southeastern Community College v. Davis* was the Supreme Court's first attempt to define the scope of § 504. 442 U.S. 397, 405 (1979) (*Southeastern*). There, the Court examined whether § 504 required a college to modify its nursing program to accommodate a hearing-impaired applicant, despite concerns about her ability to safely perform as a registered nurse. *See id.* at 400. The Court held that the college was not required to admit the applicant because the requested modifications—full-time personal supervision and elimination of clinical courses—would fundamentally alter the nature of the college's nursing program. *Id.* at 414. Although § 504 requires reasonable accommodations, the Court reasoned, it does not obligate institutions to make modifications that would impose a fundamental or substantial alteration to their programs. *See id*. But in reaching that conclusion, the Court was not asked to decide whether § 504 authorizes a private right of action for retaliation.

A few years later, in *Alexander v. Choate*, the Court revisited the Rehabilitation Act, this time presented with the question of whether Tennessee's Medicaid program's 14-day annual limit on inpatient coverage violated § 504 of the Rehabilitation Act or its implementing regulations by disproportionately impacting individuals with disabilities. 469 U.S. 287, 289 (1985). The Court held it did not because the limitation was facially neutral, provided meaningful and equal access to benefits for disabled and non-disabled individuals alike, and did not require Tennessee to alter its program to provide extended coverage to the disabled. *Id.* at 308–09. As in *Southeastern*, the Court had no occasion to consider or decide whether § 504 permits a private retaliation claim.

The Court's most recent encounter with the Rehabilitation Act occurred just this last term. In *A.J.T. v. Osseo Area Schools*, the Court undertook to answer whether disabled students

bringing claims under Title II of the ADA and § 504 of the Rehabilitation Act must satisfy a heightened standard—specifically, a showing of "bad faith or gross misjudgment"—to proceed with their claims for disability discrimination in the educational context. 605 U.S. 335, 338–39 (2025). The Court held that such claims under both statutes are subject to the same legal standards that apply in other disability-discrimination contexts, finding no textual basis for a different or more demanding standard. *Id.* at 345 (citing 29 U.S.C. § 794(a)). Yet again, the Court was not confronted with whether § 504 independently provides a cause of action for retaliation.

Nor is there binding precedent from this court on the question. Yet, Smith argues that a retaliation cause of action must exist because to hold otherwise would be to depart from decades of circuit precedent that assumed a retaliation claim could be brought under § 504. Relatedly, he also argues that a cause of action for retaliation is "well-settled" nationwide and has been recognized as such in almost every circuit.

We read the cases differently. To be sure, we apply the ordinary rule that "the holding of a published panel opinion binds all later panels unless overruled or abrogated en banc or by the Supreme Court." *Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019). But "only *holdings* are binding, not dicta." *Id.* And most importantly, for a prior panel's "conclusion about an issue to be part of its holding," "it must be clear that the court considered the issue and consciously reached a conclusion about it." *Id.* at 701–02. Thus, assumptions about particular legal issues not raised by any party, nor addressed by the panel, do not receive stare decisis effect so as to bind subsequent panels. *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). Under this standard, the question of whether a retaliation claim under § 504 of the Rehabilitation Act is actually cognizable is one of first impression.

The longstanding practice of this circuit has been to proceed under the assumption that a cause of action for retaliation exists under § 504. And in the cases where the assumption is present, inconsistencies persist regarding where that cause of action lies. How, then, did this cause of action come to be assumed? Seemingly, it first appeared in *Hiler v. Brown*, 177 F.3d 542 (6th Cir. 1999). There, the court stated that the Rehabilitation Act prohibits both discrimination and retaliation against disabled federal employees. *Id.* at 545. But the court's

reasoning was rather unclear: although referencing the ADA's anti-retaliation provision (42 U.S.C. § 12203(a)), it cited § 504(a) (29 U.S.C. § 794(a)), not the seemingly more relevant § 504(d) (29 U.S.C. § 794(d)), which is the provision that expressly incorporates the ADA's "standards." *Id.* The *Hiler* court never directly identified the statutory foundation for the cause of action—much less held that one exists—relying instead on a shared judicial assumption of its existence. And no party contested the issue or brought it to the court's attention.

Later Sixth Circuit cases have followed similar patterns. In *Gribcheck v. Runyon*, the court assumed the availability of a retaliation claim under the Act and applied the familiar *McDonnell Douglas* burden-shifting framework—thereby lending procedural structure, but no additional authority or clarity as to the claim's legal basis. 245 F.3d 547 (6th Cir. 2001). Likewise, in *A.C. ex rel. J.C. v. Shelby County Board of Education*, the court reiterated that both the ADA and § 504 of the Rehabilitation Act prohibit retaliation. 711 F.3d 687, 696 (6th Cir. 2013) (*Shelby County*). There, we cited § 12203 of the ADA and § 504(a) of the Act, supplemented this time by Department of Labor regulations explicitly banning retaliation. *See id.* at 696–97 (citing 29 C.F.R. § 33.13). But again, the *Shelby County* court had no reason to analyze the statutory basis for the retaliation claim and instead proceeded to the *McDonnell Douglas* burden-shifting framework. *Id.* at 697. Lastly, in *Kirilenko-Ison v. Board of Education of Danville Independent Schools*, we relied on *Shelby County* in stating that ADA and Rehabilitation Act claims are "analyze[d] . . . together," but offered no independent analysis of the retaliation claim's statutory source. 974 F.3d 652, 661 (6th Cir. 2020) (citing *Shelby Cnty.*, 711 F.3d at 696–97).

Smith correctly notes that our sister circuits routinely accept retaliation claims under the Rehabilitation Act without "challenging whether [one] exists." Appellant Supp. Br. at 10. However, like our own circuit, these courts have done so without rigorous statutory analysis or clear confrontation of the issue. *See, e.g.*, *Hooven–Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001) (affirming summary judgment against the plaintiff on her retaliation claim under the Rehabilitation Act because of a failure to establish a causal connection as part of the prima facie case); *Fuller v. McDonough*, 84 F.4th 686 (7th Cir. 2023) (analyzing plaintiff's Title VII and Rehabilitation Act retaliation claims together); *Owens v. Governor's Off. of Student*

*Achievement*, 52 F.4th 1327, 1339 (11th Cir. 2022) (holding that plaintiff's claims for retaliation under the Rehabilitation Act and pregnancy discrimination fail because plaintiff could not establish pretext). Their acceptance relies on varying, inconsistent rationales—some citing the Rehabilitation Act's cross-reference to the ADA, *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007), others pointing to ancillary provisions of the Act, *Quiles-Quiles v. Henderson*, 439 F.3d 1, 8 (1st Cir. 2006). And as one circuit has admitted, the textual basis for the cause of action "is not well explained." *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013). But that court relied mainly on precedent equating ADA and Rehabilitation Act retaliation claims to allow the claim to proceed. *Id.*

That other circuits have often passively accepted the existence of a retaliation cause of action under the Rehabilitation Act, yet applied divergent and inconsistent rationales, underscores that the statutory basis remains unsettled. These cases demonstrate a widespread but informal acceptance of retaliation claims lacking meaningful statutory analysis. Therefore, they are of limited persuasive value. Unlike those courts, we are confronted directly with the question and must carefully assess the cause of action's validity to resolve Smith's appeal. The time has come for us to address this long accepted, but never actually proven, assumption.

**IV.**

We begin our analysis with some first principles about implied causes of action. Judicial recognition of implied claims has been the center of longstanding debate, and often discouraged, primarily because it risks usurping Congress's role in defining legal rights and remedies. *See Cummings v. Premier Rehab Keller, P.L.L.C.,* 596 U.S. 212, 230–31 (2022) (Kavanaugh, J., concurring) ("[W]ith respect to existing implied causes of action, Congress, not this Court, should extend those implied causes of action and expand available remedies."). In other words, rather than allowing courts to infer who may sue and for what, our constitutional order requires that such decisions rest with the Congress. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress.").

Although the presumption against implied causes of action applies across the board, it carries particular weight for statutes enacted under the so-called Spending Clause of Article I,

Section 8 of the Constitution. Spending legislation, such as the Rehabilitation Act, functions "much in the nature of a contract" between the federal government on the one hand, and state governments on the other. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640–41 (1999). So, when Congress legislates pursuant to the spending power, any conditions it attaches to the receipt of federal funds—including exposure to private lawsuits—must be stated unambiguously. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); *Barnes v. Gorman*, 536 U.S. 181, 186 (2002). Put differently, recipients of federal funds must have clear notice of the obligations they are undertaking, including the scope of any potential liability. *Id.* So, the standard that Smith must meet is to show that a cause of action for retaliation unambiguously exists under the Rehabilitation Act.

## A.

As noted earlier, two statutory provisions are primarily relevant for our analysis: §§ 504(a) and (d) of the Rehabilitation Act, codified at 29 U.S.C. §§ 794(a) and (d), respectively. Here, no party relies on § 504(a) as the textual basis for a retaliation cause of action—and for good reason. That provision prohibits discrimination "solely by reason of" disability but makes no mention of retaliation. *See* 29 U.S.C. § 794(a). Without evidence of statutory intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286–87. So, we decline to read retaliation into a provision that says nothing about it.

Instead, Smith devotes much of his attention to § 504(d). As noted, Smith principally relies on this provision's reference to the ADA's anti-retaliation provision, 42 U.S.C. § 12203. But we interpret subsection (d) differently for two reasons.

*First,* as noted, if Congress intended to impose liability on states for retaliation under the Rehabilitation Act, it was required to do so "with a clear voice." *Davis*, 526 U.S. at 640 (quoting *Pennhurst*, 451 U.S. at 17). Here, § 504 is *silent* as to retaliation.

When deciding whether a statute creates a private right to sue, the controlling question is not whether a cause of action would serve the statute's purpose, but whether Congress *intended* to authorize that cause of action in the text. *See id.* And that standard is especially demanding in

the context of federal spending legislation because a state's consent to private enforcement suits "cannot be fairly inferred" unless Congress provides "clear and unambiguous notice that [the federal spending-power statute] creates a personally enforceable right." *See Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2234 (2025) (cleaned up).

It makes good sense to adhere to that principle in this case, particularly because Congress knows how to explicitly create retaliation claims. After all, retaliation claims are a common feature in federal anti-discrimination law. Title VII of the Civil Rights Act includes a standalone anti-retaliation provision, distinct from its anti-discrimination section. *See* 42 U.S.C. § 2000e-3(a). The Age Discrimination in Employment Act (ADEA) and the ADA follow the same pattern, each with separate provisions for retaliation and discrimination. *See* 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 12203 (ADA).[2]

The same pattern holds for a range of other federal statutes. The Fair Labor Standards Act (FLSA) expressly prohibits retaliation against employees who file complaints or participate in proceedings under the Act. 29 U.S.C. § 215(a)(3). Likewise, the Occupational Safety and Health Act (OSHA) explicitly forbids employers from retaliating against employees who report safety violations or exercise their rights under the statute. 29 U.S.C. § 660(c). And the Family and Medical Leave Act (FMLA) plainly bars retaliation against individuals who seek to exercise their leave rights. 29 U.S.C. § 2615(a)(2).

What these statutes have in common is this: when Congress intends to authorize a retaliation cause of action, it does so in a straightforward fashion. It separates the anti-retaliation provision from any underlying prohibition on discrimination. The Rehabilitation Act, notably, breaks from that pattern. It contains no express anti-retaliation provision, raising a serious question about whether such a cause of action exists under the Act at all—and if it does, on what legal foundation. *Cf. Hayes v. Metro Gov't of Nashville & Davidson Cnty.*, Nos. 23-5027/5075, 2023 WL 8628935, at *6 n.4 (6th Cir. Dec. 13, 2023) (acknowledging uncertainty over whether

---

[2]Pausing here, the ADA prohibits retaliation under 42 U.S.C. § 12203 and discrimination under § 12112. Although both causes of actions lie under Chapter 126, the retaliation provision is located in a separate part of the ADA—Subchapter IV: Miscellaneous Provisions; whereas, the discrimination provision is located in Subchapter I: Employment.

Title VI permits a retaliation claim but declining to reach the issue).  And as recognized, its divergence is even more critical given the Rehabilitation Act's status as Spending Clause legislation, unlike Title VII, the ADA, and the ADEA, which rest on other sources of congressional power.

Congress's decision to omit a retaliation provision from the Rehabilitation Act—*after* it included such a provision in statutes such as the ADA, Title VII, and the ADEA—is strong evidence that it did not intend to authorize private retaliation claims under the Act.  Because the Rehabilitation Act functions to impose conditions on the receipt of federal funds, what might suffice in non-Spending Clause contexts falls short here: state recipients must have unmistakable notice of the terms they are agreeing to.  *See Medina*, 145 S. Ct. at 2234.

*Second*, consider the best contextual meaning of the relevant statutory term "standards," as used in the Act.  "Standards" are not synonymous with "cause of action" in legal parlance. Standards guide how claims are adjudicated, not whether a cause of action exists in the first place.  For instance, "pleading standards" refer to the level of detail a complaint must allege to survive a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007).  "Evidentiary standards" describe the burden of proof a party must meet, such as beyond a reasonable doubt in criminal cases or by a preponderance of the evidence in civil cases.  And most relevant here, "standards" as used in "cases related to employment," *see* § 504(d), usually pertain to the familiar *McDonnell Douglas* burden-shifting framework courts use to assess discrimination claims that lack direct evidence of discrimination. *See e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary *standard*, not a pleading requirement." (emphasis added)).  Simply put, "standards" refer to how courts measure whether the facts meet the legal requirements for a cause of action or defense.  That term, in and of itself, does not create a right to sue.

Far from establishing new causes of action, the word "standards" has been understood to refer to the substantive rules or burdens—e.g., the *standard* of causation at issue here—that govern how courts evaluate claims under the Act.  In *Osseo Area Schools*, the Supreme Court held that "ADA and Rehabilitation Act claims based on educational services should be subject to

the same *standards* that apply in other disability discrimination contexts." 605 U.S. at 345 (emphasis added). It clarified that "[n]othing in the text of Title II of the ADA or Section 504 of the Rehabilitation Act suggests that such claims should be subject to a distinct, more demanding analysis," referring to standards as the substantive criteria for evaluating discrimination—not the creation or expansion of causes of action. *Id.*

Our precedent reinforces that understanding. In *Bledsoe v. Tennessee Valley Authority Board of Directors*, we addressed whether the ADA's "but for" causation requirement applied to claims under § 501 of the Rehabilitation Act, 29 U.S.C. § 791, or whether the Rehabilitation Act's "sole causation" requirement applied. 42 F.4th 568 (6th Cir. 2022). We held that claims brought under § 501 require "but for" causation, not sole causation, reasoning that "[c]ausality is clearly a '*standard*[] used to determine whether [§ 501] . . . has been violated,'" and is therefore incorporated through § 501(f). *Id.* at 580 (quoting 29 U.S.C. § 791(f)). That holding confirms that "standard" refers to the rule or burden used to evaluate a claim rather than the source of the claim itself. *Id.* By that same logic, § 504(d)'s incorporation of ADA "standards" provides guidance on how a claim under the Rehabilitation Act should be assessed, not on whether such a claim (retaliation or otherwise) exists in the first place. *See Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 842 (6th Cir. 1996) (stating that the ADA "standards apply in Rehabilitation Act cases alleging employment discrimination," citing 29 U.S.C. § 794(d), and referring to standards as "burdens of proof or production [] parties bear").

The ADA—which § 504(d) explicitly cites—points in the same direction, as do the cases that interpret it alongside the Rehabilitation Act. The ADA includes both an express retaliation provision and its own references to "standards," such as in 42 U.S.C. § 12201, where the term plainly refers to legal benchmarks, not new causes of action. And we have consistently treated the ADA and the Rehabilitation Act as related statutes. *See Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997) ("Because the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other."); *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) ("It is well-established that the [ADA and the Rehabilitation Act] are quite similar in purpose and scope."). So, Congress's explicit cross-reference to the same ADA term in the Rehabilitation Act, and its treatment of

"standards" in the ADA, provide compelling contextual evidence that § 504(d)'s use of the same term was meant to inform how claims are assessed, not to authorize new categories of claims such as retaliation. *See Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").[3]

## B.

Smith argues that *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), compels a different result. In *Jackson*, the Supreme Court held that Title IX's general prohibition on discrimination "on the basis of sex" was broad enough to include retaliation, even though the statute contains no express anti-retaliation provision. *Id.* at 174–75. But that holding rested on a long line of prior decisions, all of which interpret Title IX broadly. *See id.* (citing *North Haven Bd. of Ed. v. Bell,* 456 U.S. 512, 521 (1982)) ("Courts must accord Title IX a sweep as broad as its language" (quotation marks omitted)). The *Jackson* Court described retaliation as a "form of intentional sex discrimination," *id.* at 173, and emphasized that "funding recipients have been on notice that they could be subjected to private suits for intentional sex discrimination under Title IX since 1979, when [the Court] decided [*Cannon v. University of Chicago*, 441 U.S. 677 (1979)]," *id.* at 182. The implied retaliation claim in *Jackson* was possible only because the legal landscape—shaped by more than two decades of precedent—had already put states on notice that such claims were actionable under Title IX.

Not so here. Unlike Title IX, the Rehabilitation Act does not carry with it a similar history of expansive judicial interpretation. Nor does it contain general language like Title IX's prohibition on discrimination "on the basis of sex."[4] Instead, § 504(d) merely states that the

---

[3]Contrary to what the dissent argues, our interpretation of "standards" only to incorporate ADA *standards* in the Rehabilitation Act, and not to establish a retaliation *cause of action* under the Act, does not render "irrelevant" the cross-reference in § 504(d) to 42 U.S.C. § 12203 or other ADA provisions. Dissenting Op. at 13-14. For our purposes here, we need not address what all the ADA standards are, only that those standards do not establish a cause of action not explicitly stated in the Rehabilitation Act. The cross-reference to the ADA therefore is not superfluous because standards that govern ADA causes of action are equally applicable to Rehabilitation Act claims. Nonetheless, there still must be "clear and unambiguous notice" in the Act that a retaliation cause of action exists— that is, an explicit cause of action. As discussed above, that clear and unambiguous notice is lacking in the Act.

[4]The *Jackson* Court emphasized that Title IX prohibits discrimination generally without tying protection to the individual directly subjected to the underlying discrimination. *Id.* at 173–74. It contrasted that phrasing with

"standards" for determining whether employment discrimination has occurred under the Rehabilitation Act are the same as those applied under Title I of the ADA. When the Supreme Court has referred to "standards," it has generally done so regarding substantive legal criteria or methods of analysis, not the scope of claims a plaintiff may bring. *See, e.g.*, *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 340 (2020) ("In light of the causation *standard* Congress specified *for the cause of action* it expressly endorsed, it would be more than a little incongruous for us to employ the laxer rules ESN proposes for this Court's judicially implied cause of action." (emphasis added)). In other words, states receiving federal funds are on notice under the Rehabilitation Act that the "standards" from the ADA will be pulled over, not that a retaliation cause of action exists under the Act. That is because the word "standards" speaks only to *how* existing liability is assessed as opposed to *what kinds* of liability are available in the first place.

## C.

Lastly, Smith argues that he has a cause of action arising from a Department of Labor implementing regulation, 29 C.F.R. § 33.13, not just § 504(d) itself. He contends that because regulations "have the force and effect of law," 29 C.F.R. § 33.13 should be interpreted as giving rise to a cause of action for retaliation.

But Smith's argument sorely misses the mark. For one, an agency regulation cannot create a private right of action where the statute itself does not. *See Sandoval*, 532 U.S. at 291. Also, the cited regulation governs enforcement of § 504 of the Rehabilitation Act within "programs or activities conducted by the Department of Labor." *See* 29 C.F.R. §§ 33.1–.2. It has no application to state entities like MDOC. And even if it did, agency regulations cannot

---

language in Title VII that prohibits discrimination "because of such individual's" protected characteristic—a narrower formulation the Court suggested would not similarly support an implied retaliation claim absent express statutory language. *Id.* at 179. That distinction was central to *Jackson*'s reasoning, and it cuts against Smith's position here. The Rehabilitation Act mirrors Title VII's more limited language, barring discrimination "solely by reason of" an individual's disability. *See* 29 U.S.C. § 794(a). As previously stated, the parties agree that subsection § 504(a)—the core antidiscrimination provision of the Rehabilitation Act—does not itself provide a retaliation cause of action. Courts have also not interpreted § 504 with the same expansive lens applied to Title IX, often turning to subsection (d) as the source, despite the absence of rights-creating language.

expand the scope of liability beyond what Congress has authorized in the statute. *See Sandoval*, 532 U.S. at 291.

\* \* \*

We read § 504(d) to incorporate from the ADA only adjudicatory standards—and not to create new causes of action—because that interpretation aligns with both the ordinary legal meaning of "standards," and the structure of the Rehabilitation Act and related acts. Subsection (d) functions as a technical cross-reference provision; it is structurally and linguistically ill-suited to serve as the source of an implied right to sue.

What's more, the Constitution precludes subjecting states to liability for claims based on such indirect statutory cross-references, which are, at best, "largely indeterminate provisions susceptible to a range of plausible meanings." *Kentucky v. Yellen*, 54 F.4th 325, 348 (6th Cir. 2022). Reading a private right of action for retaliation into § 504—whether through textual silence or using § 504(d) as a backdoor to import ADA claims—fails to provide the clear notice the Constitution demands. *See Davis*, 526 U.S. at 640 (quoting *Pennhurst*, 451 U.S. at 17); *Yellen*, 54 F.4th at 348. So, to accept Smith's interpretation of subsection (d) would be to stretch "standards" beyond its established legal meaning and to assume what Congress never said—that the Rehabilitation Act independently authorizes retaliation claims through indirect reference alone. If Congress intended to create a new retaliation cause of action in the Rehabilitation Act, it could have done so as it has done numerous times before. But it did not, so we decline to find one here today.

Because § 504 of the Rehabilitation Act does not provide a private right of action for retaliation, we need not address Smith's evidentiary challenges. The judgment in favor of MDOC must be affirmed because MDOC cannot be liable for a cause of action that does not exist.

**V.**

With the retaliation claim resolved, we turn to Smith's argument that the district court erred in granting summary judgment to MDOC on his failure-to-accommodate claim. He raises

two reasons for why we should reverse. First, he contends that the court misapplied the "otherwise qualified" element of the prima facie case. Second, he argues that the court improperly credited MDOC's undue-hardship defense. Neither argument persuades.

We review a district court's grant of summary judgment de novo. *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Summary judgment is appropriate when, viewing all the facts in the light most favorable to the non-movant (Smith), "no genuine dispute of material fact" exists and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is considered genuine if a reasonable jury could decide in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Smith has not created a genuine dispute as to whether he was "otherwise qualified" for the position of corrections officer, with or without a reasonable accommodation. He therefore cannot make out his prima facie case. Because of this, the district court did not err in granting summary judgment to MDOC.

Failure-to-accommodate claims necessarily involve direct evidence. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007).[5] So we set aside the traditional *McDonnell Douglas* burden-shifting approach—typically used in cases involving indirect or circumstantial evidence—and instead evaluate the claim using a different analytical framework. *See Fisher v. Nissan North American, Inc*, 951 F.3d 409, 416 (6th Cir. 2020) (collecting cases). Under the Rehabilitation Act, in order to prevail on a failure-to-accommodate claim, Smith must first establish a prima facie case by showing: (1) he is disabled; (2) he is "otherwise qualified" for his position; (3) MDOC "knew or had reason to know about [his] disability"; (4) he requested an accommodation; and (5) MDOC failed to provide one. *Kirilenko-Ison v. Bd. of Educ.*, 974 F.3d 652, 669 (6th Cir. 2020).

Smith also bears the burden of demonstrating that his requested accommodation was reasonable. *Jakubowski*, 627 F.3d at 202. If he succeeds, the burden then shifts to MDOC to show that "a challenged job criterion is essential, and therefore a business necessity, or that a

---

[5]We have long held that cases analyzing analogous provisions of the ADA inform our analysis of failure-to-accommodate claims brought under the Rehabilitation Act. *See, e.g.*, *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010); *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 323 (6th Cir. 2023).

proposed accommodation will impose an undue hardship upon the employer." *Kleiber*, 485 F.3d at 869 (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004)).

The parties do not dispute that Smith is disabled. Instead, the disagreement rests on whether Smith has demonstrated that he is "otherwise qualified" for his position within the meaning of the Rehabilitation Act. To make this showing, Smith must establish that he can perform the "essential functions" of his job, despite his disability, in one of three ways: (1) without an accommodation from his employer; (2) with an alleged "essential" job requirement removed; or (3) with a proposed reasonable accommodation. *Hedrick*, 355 F.3d at 452; *see also* 42 U.S.C. § 12111(8). To resolve this issue, we ask two questions. First, what is the relevant "position" for purposes of the essential-functions analysis? And second, has Smith shown that he can perform the essential functions of that position, with or without accommodation?

As to the first question, Smith argues that the appropriate reference point is the role he was actually performing at the time he requested the accommodation—his TE assignment in the training office. But MDOC maintains, and the district court held, that the position material to this analysis is Smith's formal role as a corrections officer.

We agree with MDOC. When an employee remains officially classified in his or her permanent role and continues to receive the corresponding salary and benefits—even while working in a temporary or modified position—the position is not redefined based on the duties of the temporary assignment. *See Lai Ming Chui v. Donahoe*, 580 F. App'x 430, 434 (6th Cir. 2014). That reasoning extends to Smith's situation. Smith remained classified and paid as a corrections officer throughout his transitional assignment, so the correct reference point is his role as a corrections officer. Accordingly, we define Smith's position by the responsibilities of a corrections officer—the position he was originally hired into and held for quite some time.

From this point, the analysis is straightforward. We next ask whether Smith could perform the essential functions of a corrections officer. He concedes that he could not. That admission leaves him with only one path to establish that he was "otherwise qualified" under the ADA—showing he could perform the job with a *reasonable* accommodation. *See EEOC v. Ford*

*Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015) (en banc) ("In failure-to-accommodate claims where the employee requests an accommodation that exempts her from an essential function, the essential functions and reasonable accommodation analyses run together." (cleaned up)).

Smith's proposed accommodation—continuing in his TE role—was not reasonable. He argues that MDOC should have considered reassigning him to a different position within the facility, specifically to what he describes was a "funded, existing position working for ITO Felder." Appellant Br. at 38, 41. But reassignment under the ADA requires more than a general assertion of what Smith believes is available. And the record makes clear that TE assignments—such as the one Smith points to—are not permanent, budgeted positions eligible for reassignment. As MDOC's former ADA Coordinator Joanne Bridgford explained, a TE assignment is not a vacancy—it is a temporary set of tasks pulled from various roles and customized to an employee's restrictions. The purpose, she explained, is to provide limited-duty work to the employee while he recovers, with the hope that the officer will return to full duty. Elaine Davis, MDOC's Human Resources Officer, confirmed this understanding, stating that MDOC does not "have a specific light duty position." R. 25-5, Davis Dep., PageID 177–78. TE assignments are "outside" an employee's formal job classification, lack official titles, and—critically—are not funded positions.

In response, Smith points to a portion of Davis's testimony suggesting that "the facility had a need for employees such as Plaintiff working in light duty," as evidence that the TE position was permanent and funded. R. 25-5, PageID 185. But a general "need" does not transform a temporary assignment into a vacant, budgeted position eligible for reassignment. Nor is an employer required to create a permanent position simply because an employee's transitional role happened to meet a temporary operational need. To survive summary judgment, Smith has the burden to "identify the specific job he seeks and demonstrate that he is qualified for that position." *Kleiber*, 485 F.3d at 870. He has not done so. Because his TE assignment fails to meet the required standard and he has not brought forth any evidence of other qualifying jobs, Smith cannot meet his prima facie burden. *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004).

For similar reasons, Smith also fails to raise a genuine dispute that MDOC violated its duty to engage in the interactive process. *See Kleiber*, 485 F.3d at 871. He contends that "[n]o one involved in the decision to deny [his] accommodation request evidently considered whether it was feasible to keep him employed in a transitional employment assignment." Appellant Br. at 46. But a breakdown in the interactive process is actionable "only if it prevents identification of an appropriate accommodation for a qualified individual." *Ford Motor Co.*, 782 F.3d at 766 (citation omitted). Because Smith's proposed accommodation was not reasonable, his claim cannot proceed on that basis either.

Finally, Smith argues that MDOC failed to show that accommodating him in the TE assignment would pose an undue hardship. But an employer's burden to show undue hardship arises only after the employee first makes a prima facie showing of discrimination. *Kleiber*, 485 F.3d at 869. Because Smith has not met that threshold, the inquiry ends there. The district court correctly granted summary judgment in MDOC's favor.

**VI.**

Smith's issues on appeal relating to his retaliation claim are resolved by our holding that § 504 of the Rehabilitation Act does not provide a cause of action for retaliation. And his failure-to-accommodate claim was properly dismissed as a matter of summary judgment. We therefore **AFFIRM** the district court's judgment.

_____

## CONCURRENCE / DISSENT

_____

BLOOMEKATZ, Circuit Judge, concurring in part V (failure-to-accommodate claim) and dissenting in parts II, III, and IV (retaliation claim).

Neither party argued in the district court, or in their regular briefing before our court, that § 504 of the Rehabilitation Act lacks a private cause of action for retaliation. Quite the opposite—both Porter Smith and the Michigan Department of Corrections (MDOC) explicitly represented to us and the district court that § 504 creates that cause of action. Nonetheless, the majority opinion declares that "[t]his appeal presents a question of first impression: Does a private cause of action for retaliation exist in § 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794?" Maj. Op. at 2. Then—based on supplemental briefing—it upends decades of established precedent in this court and our sister circuits that has recognized that individuals can sue under the Rehabilitation Act if an employer retaliates against them for asserting their rights under the statute. I disagree that this appeal "presents" that question for our review. But even if it did, I would follow the statutory text and hold that § 504 of the Rehabilitation Act—by directly cross-referencing the Americans with Disabilities Act's retaliation provision—provides a cause of action for Smith's retaliation claim. With that understanding, I would reach the question the parties asked us to decide: whether "but-for" or "sole" causation applies to that retaliation claim. Given the cross reference to the ADA, "but-for" causation applies, so I would vacate the district court's contrary judgment and remand the retaliation claim for further proceedings. Accordingly, I respectfully dissent.

## ANALYSIS

### I. Statutory Background

The Rehabilitation Act and the ADA provide the framework for the issues in this case, so I begin with a brief overview of the relevant provisions. Congress passed the Rehabilitation Act in 1973 to protect individuals from disability-based discrimination. *McCormick v. Miami Univ.*, 693 F.3d 654, 663 (6th Cir. 2012). The statute implements that mandate by prohibiting

discrimination against disabled persons in federally assisted programs or activities. *Id.* Specifically, § 504(a) of the Rehabilitation Act ensures that an individual cannot be "excluded from" or "subjected to discrimination" by a wide array of federally funded programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Because the Rehabilitation Act applies only to recipients of federal funds, its enactment left disabled individuals working in the private sector without protection. To fill that gap, Congress passed the Americans with Disabilities Act of 1990 (ADA), Pub. L. 101-336, 104 Stat. 327 (codified at 42 U.S.C. §§ 12101–12213), which expanded protections for individuals with disabilities beyond federally funded programs. The relevant portions of the ADA for this appeal are Title I, which prohibits private sector employment discrimination, *see* 42 U.S.C. §§ 12111– 12117, and Title IV, which consists of the ADA's "Miscellaneous Provisions," including a prohibition on retaliating against or interfering with those who assert their rights under the statute, *see id.* §§ 12201–12213.

Two years after Congress enacted the ADA, it amended the Rehabilitation Act to bring the statutes "in line" with each other, given their shared purpose. *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459–60 (6th Cir. 1997); *Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968, 973 (10th Cir. 2002). The amendment did so, in part, by adding subsection (d) to § 504, which addresses how the Rehabilitation Act's anti-discrimination provision applies in a single context—employment—and aligns it more closely to how the ADA deals with private employment. *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 633 (6th Cir. 1999). Subsection (d) provides that in cases alleging employment discrimination under § 504 of the Rehabilitation Act, "standards" from parts of the ADA govern. It then cross references "the standards applied under [T]itle I" and "the provisions of sections 501 through 504, and 510" of the ADA (42 U.S.C. §§ 12111 et seq, 12201–12204, 12210). 29 U.S.C. § 794(d). By cross-referencing "the provisions of sections 501 through 504, and 510" of the ADA, the Rehabilitation Act incorporates several of the ADA's "Miscellaneous Provisions," including, as most relevant here, § 503—the ADA's anti-retaliation provision, codified at 42 U.S.C. § 12203(a). It states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." *Id.*

Because of the addition of subsection (d) to § 504 of the Rehabilitation Act, courts have recognized that "analyses of [employment discrimination] claims made under the two acts run roughly parallel." *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002). And unless there is an explicit contradiction between the two statutes, they are interpreted the same. *Cf. Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315–17 (6th Cir. 2012) (en banc).

Reflecting this alignment between the statutes in the employment context, we have consistently treated § 504 of the Rehabilitation Act as providing a cause of action for retaliation. *E.g.*, *Hiler v. Brown*, 177 F.3d 542, 545 (6th Cir. 1999); *Gribcheck v. Runyon*, 245 F.3d 547, 549–50 (6th Cir. 2001); *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696–97 (6th Cir. 2013); *Post v. Trinity Health-Mich.*, 44 F.4th 572, 578 (6th Cir. 2022); *Newell v. Cent. Mich. Univ. Bd. of Trs.*, No. 20-1864, 2021 WL 3929220, at *4 (6th Cir. Sept. 2, 2021); *Canter v. Disability Network W. Mich.*, No. 22-1856, 2023 WL 5627318, at *4 (6th Cir. Aug. 31, 2023); *Tri-Cities Holdings LLC v. Tenn. Admin. Procs. Div.*, 726 F. App'x 298, 316–17 (6th Cir. 2018); *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660–61 (6th Cir. 2020); *Payne v. O'Neil*, 73 F. App'x 144, 146 (6th Cir. 2003); *Dillon-Barber v. Regents of Univ. of Mich.*, 51 F. App'x 946, 951 (6th Cir. 2002); *Plautz v. Potter*, 156 F. App'x 812, 815–16 (6th Cir. 2005) (per curiam).

Every one of our sister circuits has done the same. *See Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 47–48 (1st Cir. 2000); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002); *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 266–67 (3d Cir. 2007); *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 (4th Cir. 2016); *January v. City of Huntsville*, 74 F.4th 646, 652–53 (5th Cir. 2023); *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 641 (7th Cir. 2015); *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013); *Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 824–26 (9th Cir. 2009); *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007); *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1337 (11th Cir. 2022); *Minter v. District of Columbia*, 809 F.3d 66, 70 (D.C. Cir. 2015).

This consensus, while grounded in statutory text, is also grounded in the reality of employment discrimination claims. Protection against retaliation is essential to effective

enforcement of anti-discrimination statutes because those regimes depend on individuals coming forward to report violations. *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 568–69 (3d Cir. 2002). That is especially true in the disability context, where statutory protections apply after an employee asserts a right by disclosing the disability and seeking an accommodation—a step that itself makes the employee vulnerable to retaliation. *See Guzman v. Brown County*, 884 F.3d 633, 642–43 (7th Cir. 2018). Congress's prohibition on discriminating against a disabled employee— say, someone with a condition that prevents standing for long periods—does little if an employer can legally retaliate against that same employee for requesting an accommodation—say, asking to sit on a stool while working. It follows that Congress supplied a critical enforcement mechanism when it incorporated the ADA's anti-retaliation provision to employment discrimination claims brought under the Rehabilitation Act.

## II.     Issue Not "Present[ed]"

Despite this long-established consensus, the majority opinion decides to evaluate anew whether § 504 provides a private right of action for retaliation. I would not reach this issue because MDOC conceded from the outset of the case that the statute has a retaliation cause of action. And the question is not a jurisdictional one, requiring us to weigh in. *See Cassity v. United States*, 521 F.2d 1320, 1321 n.2 (6th Cir. 1975). Instead, the majority opinion reaches to answer a question that, in my view, was not presented in this appeal.

Consider first the parties' arguments in this case in the district court. Smith brought a lawsuit under the Rehabilitation Act claiming both that MDOC failed to accommodate his disability (his hip injury) and retaliated against him for pressing for an accommodation (by pursuing "baseless disciplinary investigations" and terminating him for spurious reasons). Order, R. 35, PageID 890. MDOC moved for summary judgment on both claims but never argued that Smith lacked a cause of action for retaliation under the Rehabilitation Act. *See, e.g.*, MSJ, R. 26, PageID 244. Instead, it explained to the court why MDOC was not liable for retaliation on the merits. *See id.* Consequently, in ruling on summary judgment, the district court laid out the cause of action for retaliation claims as follows:

> In analyzing claims under the [Rehabilitation Act], courts generally look to caselaw interpreting the Americans with Disabilities Act of 1990 ("ADA"),

42 U.S.C. § 12111 et seq. *See McPherson v. Mich. High Sch. Ath. Ass'n*, 119 F.3d 453, 459-60 (6th Cir. 1997) (en banc). This is because the [Rehabilitation Act] "specifically incorporates the standards applied under the ADA to determine violations," *Bent-Crumbley v. Brennan*, 799 F. App'x 342, 344-45 (6th Cir. 2020) (citing 29 U.S.C. § 794(d)). This includes 42 U.S.C § 12203, the ADA's anti-retaliation provision. *See A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696-97 (6th Cir. 2013).

Order, R. 35, PageID 881. While the district court granted MDOC summary judgment on the accommodation claim, it denied summary judgment on the retaliation claim, so the retaliation claim went to trial. The parties disputed the jury instructions on retaliation, but again, MDOC did not dispute the district court's ruling that Smith could sue for retaliation under the Rehabilitation Act.

MDOC did not press this theory on appeal either. It never argued in its appellee brief that there is no private right of action for retaliation under the Rehabilitation Act. To the contrary, MDOC expressly told us that "Section 504 creates the basis for Smith's cause of action" for retaliation, and that "Smith's claim of retaliation arises under the plain language of Section 504." Appellee Br. at 20.

Only in its supplemental briefing did MDOC flip its position, asserting for the first time that § 504 provides no cause of action for retaliation. To be sure, we directed the parties to address in simultaneous supplemental briefing "whether and how the Rehabilitation Act provides a cause of action for retaliation." Suppl. Br. Letter, D. 31. But a request to further explain (i.e., "supplement") the parties' respective positions is not an invitation for them to adopt new arguments that run contrary to the positions the parties had taken throughout the entirety of the litigation. *See Valent v. Comm'r of Soc. Sec.*, 918 F.3d 516, 524 (6th Cir. 2019) (holding that the "new arguments" raised in the supplemental brief "are not properly before [this court] because they were not raised in [the] opening brief"); *Bowles v. Marx Hide & Tallow Co.*, 153 F.2d 146, 149 (6th Cir. 1946) ("Appellant, on appeal, cannot change the theory of his case made by his pleadings and his conduct of the case."). Typically, this court would consider that flipped argument at least forfeited—twice over. *See Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*, 689 F.3d 793, 799 (6th Cir. 2012) (for failure to raise before the district court); *Scott v. First So. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019) (for failure to raise in the opening brief). Instead, with

supplemental briefing, the majority opinion blesses MDOC's 180-degree flip.  I would not exercise this court's discretionary authority to decide this question because I fear that allowing supplemental briefing to operate in this manner sets a dangerous precedent.  *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439 (1994) (explaining appeals courts' discretionary authority to decide issues not raised by the parties).

The majority opinion's explanation for why it must decide whether § 504 of the Rehabilitation Act provides a cause of action for retaliation is unpersuasive in my view.  *First*, the majority opinion reasons that to determine the "proper elements of a retaliation claim," it "must first determine where the cause of action comes from," and, therefore, if there is "a claim for retaliation in the first place."  Maj. Op at 5–6.  *Second*, it says we have no binding precedent on the question because it construes our cases deciding retaliation claims under the Rehabilitation Act as resting only on an "assumption" that a cause of action exists.  *Id.* at 10.

But, given our precedents, I do not see how both statements can be true.  If we must "necessarily" determine whether there is a cause of action for retaliation, *id.* at 7, to "resolve" the elements of such a claim, *id.* at 5, then that same predicate would have been necessary in our earlier Rehabilitation Act cases, where we likewise needed to identify the "proper elements of a retaliation claim" at summary judgement.  *See supra* at 26 (listing cases).  The elements of a claim do not vary depending on procedural posture; instead, they "remain constant through the life of a lawsuit," even if a plaintiff's evidentiary burden increases as the case progresses.  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020) (addressing but-for causation under federal anti-discrimination law).  Yet, the majority opinion dismisses those cases as involving only an unexamined "assumption" of a cause of action, and on that basis treats them as nonbinding—while at the same time declining to proceed on that same assumption here, asserting that it has no choice but to make binding precedent to articulate the elements here.

This contradictory justification for reaching the cause-of-action question here affirms for me that this appeal does not "present[] a question of first impression" that must necessarily be resolved to decide the appeal.  Maj. Op. at 2.  Instead, the majority opinion reaches an issue that MDOC itself disclaimed until supplemental briefing.  Like the district court and the parties'

regular briefing below and on appeal, I would proceed with our decades-long practice of recognizing a cause of action for retaliation under the Rehabilitation Act.

**III.    Right of Action**

Were the question properly before us, I would hold that § 504(d) of the Rehabilitation Act provides a cause of action for retaliation.  I agree with the majority opinion that § 504(a) and § 504(d) are the relevant provisions for evaluating the question.  Section 504(a), as I explained above, generally bars discrimination in federally funded programs, and stretches far beyond employment discrimination.  In relevant part, § 504(a) states:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  By contrast, § 504(d) applies to a subset of § 504(a) claims—those involving employment discrimination.  Critically, it aligns employment discrimination claims under § 504(a) with employment discrimination claims under the ADA, as delineated in Title I of the ADA and other enumerated provisions.  In full, § 504(d) states:

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

*Id.* § 794(d).  So, when an individual brings a Rehabilitation Act claim for employment discrimination, instead of following the typical standards under § 504(a) that apply to the broad swaths of Rehabilitation Act claims, courts should use "the standards applied under title I of the [ADA] and the provisions of sections 501 through 504, and 510, of the [ADA], as such sections relate to employment."  29 U.S.C. § 794(d).  As I read it, subsection (d) creates a "carve-out" for employment discrimination claims.  *Natofsky v. City of New York*, 921 F.3d 337, 345 n.1 (2d Cir.

2019). And, with subsection (d), Congress has instructed courts to use the enumerated sections from the ADA to evaluate those claims. 29 U.S.C. § 794(d).[1]

Subsection (d) expressly references several ADA provisions, including § 503—the ADA's anti-retaliation cause of action. Codified at 42 U.S.C. § 12203, the provision bars retaliation against employees who oppose disability discrimination or participate in related proceedings. It states:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

*Id.* § 12203(a). Our court has read this language in the ADA as authorizing a private right of action for victims of such retaliation. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014); *Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 588 (6th Cir. 1998). The majority opinion likewise agrees that, by explicitly barring retaliation, § 12203 creates a cause of action for a retaliation claim. Maj. Op. at 14–15. Therefore, by incorporating § 12203 of the ADA (as applied to employment discrimination claims), subsection (d) of § 504 of the Rehabilitation Act

---

[1]Understanding the structure of § 504 of the Rehabilitation Act this way, courts have concluded that causation for employment discrimination claims under the Rehabilitation Act should be evaluated under a "but-for" standard. *Natofsky*, 921 F.3d at 345–46; *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008). I recognize that some of our cases have assumed that employment discrimination claims brought under the Rehabilitation Act apply the general "sole" causation standard in § 504(a), and not the "but-for" causation standard required by the ADA (and incorporated via § 504(d)). *See Lewis*, 681 F.3d at 315–17 (en banc) (holding that Title I of the ADA uses "but-for" causation standard). But in none of these cases is it "'clear that the court considered the issue and consciously reached a conclusion about it.'" Maj. Op. at 10 (quoting *Wright v. Spaulding*, 939 F.3d 695, 701–02 (6th Cir. 2019)). *See, e.g.*, *Finley v. Huss*, 102 F.4th 789, 823 (6th Cir. 2024) (stating, without analyzing, that Rehabilitation Act's sole-causation standard applied in employment discrimination claim); *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452 (6th Cir. 2008) (same); *Fritz v. Michigan*, 747 F. App'x 402, 404 (6th Cir. 2018) (same). Our en banc opinion in *Lewis v. Humboldt Acquisition Corporation* likewise did not resolve the question of the causation standard for employment discrimination claims under the Rehabilitation Act, and if it differed from the causation standard applied to Rehabilitation Act claims outside of the employment context. 681 F.3d at 315–17; *see also Natofsky*, 921 F.3d at 346 (explaining that *Lewis* addressed "whether the ADA imported the 'solely' causation standard from [§504(a)]," which is "an entirely different question than whether the Rehabilitation Act contains a carve-out for employment discrimination claims pursuant to [§ 504(d)] and renders *Lewis* irrelevant to [that] issue"); MDOC Reply in Supp. of MSJ, R. 31, PageID 854 & n.1 (explaining that *Lewis* does not apply to retaliation). *Lewis* held that we could not interpret the ADA and the Rehabilitation Act the same in the places where the text conflicts. 681 F.3d at 315–17. But adopting a "but-for" causation standard for employment discrimination claims under § 504 of the Rehabilitation Act does not create a textual conflict; § 504(a)'s "solely"-caused language still applies to the broad swath of Rehabilitation Act claims, but because § 504(d) says that the "standards" used in "employment discrimination claims under [§ 504] shall be the standards applied" by the ADA, the "but-for" standard applies in that explicitly carved-out context. 29 U.S.C. § 794(d); *Natofsky*, 921 F.3d at 345 n.1.

likewise prohibits retaliation and provides a cause of action for employees who experienced such retaliation. 29 U.S.C. § 794(d); *Hiler*, 177 F.3d at 545; *Jarvis*, 500 F.3d at 1125.

The majority opinion concludes otherwise.  It asserts that § 504(d) is "*silent* as to retaliation" and therefore fails to satisfy the "especially demanding" standard for recognizing rights of action under federal spending legislation.  Maj. Op. at 13.  In my view, that characterization ignores the text: § 504(d) expressly incorporates the ADA retaliation provision (§ 12203), giving "'clear and unambiguous' notice that [the Rehabilitation Act] creates a personally enforceable right." *See Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2234 (2025).  While the majority opinion concedes that the ADA itself provides a cause of action for retaliation, it also insists that the Rehabilitation Act does not—despite its express incorporation of the same provision.  I do not see how that conclusion can be squared with the principle that Congress "need not use magic words in order to speak clearly." *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011).  The direct cross reference seems quite clear to me.

Nor am I persuaded by the majority opinion's reliance on the structure of other civil rights statutes.  Surveying multiple federal anti-discrimination and employment statutes, the majority opinion observes that when Congress creates a retaliation cause of action, "[i]t separates the anti-retaliation provision from any underlying prohibition on discrimination."  Maj. Op. at 14.  Then it notes that the Rehabilitation Act "breaks from that pattern." *Id.*  To be sure, Congress has often separated anti-retaliation provisions from underlying discrimination bans.  But I fail to see the big difference here.  The Rehabilitation Act's main anti-discrimination provision is in subsection (a), as described above. Then, it separately incorporates the ADA's retaliation provision by directly cross-referencing it in subsection (d).  Rather than restate a retaliation claim, Congress chose to proceed by incorporating the ADA's.  But that doesn't make the inclusion of a retaliation claim unclear.  Even focusing narrowly on the subsection (d) carve-out for employment discrimination claims, I still see the separation the majority opinion seeks: the Rehabilitation Act cross references *both* ADA Title I—which is the ADA's general anti-discrimination provision—and ADA § 12203—which is the ADA's anti-retaliation provision. 29 U.S.C. § 794(d).

The majority opinion acknowledges that § 504(d) of the Rehabilitation Act cross references the ADA provisions, but it emphasizes that the statute only incorporates the "standards" from the ADA, which, in its view, does not extend to causes of action. Maj. Op. at 15. From its perspective, "standards" means only the "substantive criteria" courts use to "measure whether the facts meet the legal requirements for a cause of action or defense," such as the causation standard or a burden of proof. *See id.* at 15–16. I see two main problems with this reading of subsection (d): *first*, that it cabins the idea of "standards" too narrowly; and, *second*, that it renders much of subsection (d) meaningless.

*First*, I disagree that "standards" in this context refers only to burdens of proof, causation standards, pleading requirements, or the methodology used to assess claims (like the *McDonnell Douglas* burden-shifting framework). Maj. Op. at 15. I don't see why "standards" cannot have a more capacious meaning, encompassing substantive prohibitions, metrics for evaluating those prohibitions, and corrective action alike. In law school, for instance, if students are bound by the university's "academic standards," that could include specific rules or prohibitions (e.g., plagiarism), metrics for ascertaining compliance with the rule (e.g., submitting another's work as your own, misrepresenting authorship, or failure to attempt to cite sources), and the corrective action prescribed if the metric is not satisfied (e.g., a failing grade on the assignment). *See, e.g.*, *Academic Standards*, George Mason Univ., https://perma.cc/A7YB-PAF2. Likewise, prohibiting retaliation and providing a remedy for it can be "standards" prescribed by a statute.

The majority opinion states that the word "standards" speaks only to "*how* existing liability is assessed." Maj. Op. at 18. But even accepting that definition, "standards" can still incorporate prohibitions, like a ban on retaliation. No one disputes that there is a cause of action for violating § 504(a) of the Rehabilitation Act. *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002). And subsection (d) tells us how we assess that claim: it states that the enumerated "provisions . . . of the [ADA]" shall be "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section." 29 U.S.C. § 794(d). So, it tells us to use the cross-referenced provisions of the ADA; if they are violated, then the Rehabilitation Act is violated. Accordingly, even under the majority opinion's view that the Rehabilitation Act cannot add a new cause of action by cross-referencing the

ADA's cause of action, the Rehabilitation Act still explains the "standards" for assessing if its own cause of action is violated—by looking to whether the ADA's enumerated provisions have been violated. And if an employer retaliates against an employee for seeking an accommodation as prohibited by § 12203 of the ADA, it has also violated § 504 of the Rehabilitation Act.

*Second*, I also reject the majority opinion's narrow construction of "standards" because it would render parts of subsection (d) entirely meaningless. When Congress amended the Rehabilitation Act to bring it more in sync with the ADA, I would not assume that it intended its cross references to the ADA to do nothing. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359–60 (2016). Yet that's what the majority opinion's analysis does. Consider the cross reference at issue here: subsection (d) of § 504 expressly incorporates § 12203 from the ADA. Section 12203 contains three provisions: one prohibiting retaliation (at issue in this case), another prohibiting coercion, interference, or intimidation, and a third establishing remedies and procedures for those claims. *See* 42 U.S.C. § 12203(a)–(c). The majority opinion's narrow reading of "standards" would render that entire cross reference irrelevant. It would not allow any "new categories of claims such as retaliation," Maj. Op. at 17, and presumably for coercion, interference, or intimidation either, which would render the cross reference to both those prohibitions meaningless, along with the provision setting forth the remedies for violating those provisions. That is not how we're supposed to read statutes. *Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir. 2000).

Nor is the problem confined to § 12203. Congress incorporated other ADA provisions in subsection (d) that do not impose "standards" under the majority's narrow definition. 29 U.S.C. § 794(d); *see, e.g.*, 42 U.S.C. §§ 12202 (waiving state sovereign immunity), 12204 (directing promulgation of regulations). The majority's reading would also treat these sections as surplusage, effectively nullifying much of the 1992 amendments to the Rehabilitation Act. That approach violates the principle that courts must "give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (citation modified). The majority opinion does not proffer why Congress would have explicitly added so many meaningless cross references to the Rehabilitation Act. Nor could MDOC, once it switched its position, explain how its view gives any meaning to these cross references. Oral Argument at

18:30, Porter Smith v. MDOC (No. 24-1439), https://www.courtlistener.com/audio/97022/porter-smith-v-mdoc/.

The better reading, in my view, is one that gives effect to all § 504(d)'s language—including its incorporation of the ADA's prohibition on retaliation—rather than one that renders Congress's deliberate cross references meaningless.

## IV.    Causation

Having determined that § 504(d) recognizes a right of action for retaliation, I reach the question the parties initially asked: whether the district court properly instructed the jury on the causation element of Smith's retaliation claim.   This court reviews a district court's "determination regarding the legal accuracy" of a jury instruction de novo, and its "refusal to give a requested jury instruction for an abuse of discretion." *Frye v. CSX Transp., Inc.*, 933 F.3d 591, 600 (6th Cir. 2019).  We will set aside a jury verdict based on a faulty instruction only if, viewing the instructions wholistically, the error was not harmless.  *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009).

Because Smith's retaliation claim is based on indirect evidence, he must establish four elements to make a prima facie case: (1) he engaged in protected activity; (2) MDOC knew of this protected activity; (3) MDOC took an adverse action against him; and (4) there is "a causal connection between the protected activity and the adverse action." *A.C.*, 711 F.3d at 697.  On the causation element, the district court instructed the jury that they must find "that defendants took an employment action adverse to Mr. Smith *solely* by reason of his protected activity." Trial Tr. Vol. 7, R. 95, PageID 2811 (emphasis added).  MDOC claims the district court's jury instruction articulated the proper standard for Smith's retaliation claim given the language in § 504(a).  *See* 29 U.S.C. § 794(a) (prohibiting discrimination against an individual "solely by reason of her or his disability").[2]  Smith argues that subsection (d) incorporates the ADA's anti-retaliation provision—and, by extension, its but-for causation standard. *See Rorrer*, 743 F.3d at

---

[2]On causation too, MDOC changed its position over the course of this litigation.  At the summary judgment stage, it acknowledged that "[t]he causation standard under a retaliation claim is a 'but for' standard."  Reply in Supp. of MSJ, R. 31, PageID 854 & n.1.  But by the time it proposed jury instructions, MDOC argued for a sole-causation standard instead.  Trial Br. Regarding Causation Under the Rehabilitation Act, R. 75, PageID 1875–76.

1046. I agree with Smith. Recall that § 504(d) creates a carve-out for claims under the Rehabilitation Act "alleging employment discrimination" and applies the enumerated ADA provisions to those claims. 29 U.S.C. § 794(d). No one disputes that the ADA's anti-retaliation provision requires only "but-for" causation. Since § 504(d) incorporates the ADA's anti-retaliation provision, its but-for causation standard governs retaliation claims brought under § 504 too.

Our precedent supports this conclusion. For example, in *A.C. ex rel. J.C. v. Shelby County Board of Education* this court explained that "for purposes of retaliation analysis, cases construing either [the ADA or Rehabilitation] Act are generally applicable to both." 711 F.3d at 697. To make their prima facie case, then, the *A.C.* plaintiffs needed to establish that "there was a causal connection between the protected activity and the adverse action." *Id.* That meant they needed to show that the "adverse action would not have been taken had the plaintiff not engaged in"—that is, but for—the plaintiffs' "protected activity." *Id.* at 699 (citation modified). This court reiterated the point in *M.L. v. Williamson County Board of Education*, when it recognized that establishing a "causal connection" satisfies the causation element of a prima facie retaliation claim under § 504 of the Rehabilitation Act. 772 F. App'x 287, 291 (6th Cir. 2019). And in *Gribcheck v. Runyon*, this court again required only that "the protected activity and the adverse employment action are causally connected." 245 F.3d at 550.

Even though MDOC concedes that these cases all require a "causal connection," it nevertheless maintains that they do not "actually examine the *kind* of causation required" and so do not apply to the instant case. Appellee Br. at 27 (emphasis added). But, as discussed above, this court has repeatedly recognized that "causal connection" means but-for causation in retaliation cases. *See, e.g.*, *Philbrick v. Holder*, 583 F. App'x 478, 489 (6th Cir. 2014). And other circuits have reached the same conclusion. *See Rivera-Velázquez v. Regan*, 102 F.4th 1, 9 n.4, 12–13 (1st Cir. 2024); *Natofsky*, 921 F.3d at 353 (2d Cir.); *Montanye v. Wissahickon Sch. Dist.*, 218 F. App'x 126, 131 (3d Cir. 2007); *Perry v. Comput. Scis. Corp.*, 429 F. App'x 218, 219–20 (4th Cir. 2011) (per curiam); *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 277–78 (5th Cir. 2014) (per curiam); *Fuller v. McDonough*, 84 F.4th 686, 691 (7th Cir. 2023); *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006); *Silbaugh v. Buttigieg*, No. 21-35694, 2022

WL 1641696, at *1 (9th Cir. May 24, 2022) (mem.); *Jarvis*, 500 F.3d at 1125 (10th Cir.); *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 749 F. App'x 776, 782 (11th Cir. 2018) (per curiam); *Minter*, 809 F.3d at 70 (D.C. Cir.). The district court departed from this inter-circuit consensus by instructing the jury to apply a more demanding causation standard.

This error was not harmless in my view of the record because it is uncertain that the jury would have reached the same result under the proper standard. *See U.S. v. Kuehne*, 547 F.3d 667, 681 (6th Cir. 2008). "Sole" causation is quite a steep standard, and given the trial evidence, the jury may have found in Smith's favor had the jury instructions required less. I would therefore have vacated the verdict and remanded for a new trial on Smith's retaliation claim with the proper jury instructions.

**CONCLUSION**

Because, in my view, § 504(d) of the Rehabilitation Act recognizes a cause of action for retaliation and the district court erroneously instructed the jury on the causation element of this claim, I respectfully dissent.